IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MYRA B. KLINE | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:17-cv-123 |
| | § | JURY TRIAL |
| VALUEBANK TEXAS | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Myra B. Kline, (hereinafter "Plaintiff"), filing this her *Plaintiff's Original Complaint*, complaining of ValueBank Texas (hereinafter "VBT" or "Defendant") and showing for cause of action as follows:

## I.
## JURISDICTION, VENUE & PARTIES

1. This is an action by Plaintiff against Defendant for depriving Plaintiff of retirement/employment benefits in violation of 29 U.S.C. §§ 1001 et seq., ("ERISA"). Plaintiff seeks damages and reasonable attorney's fees.

2. Jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343, as the causes of action involve a federal question based upon ERISA, and by Title 28 U.S.C. §1337 and by Title 29 U.S.C. §216(b). At all times pertinent to this Complaint, Defendant was an enterprise engaged in interstate commerce. The Court has personal jurisdiction over Defendant because Defendant conducted business in Texas, has entered into relationships with Plaintiff in Texas, and committed actions in Texas that give rise to this cause of action.

3. Defendant was substantially in control of the terms of Plaintiff's work and was the Plaintiff's employer as defined by 29 U.S.C. §203(d).

4. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in said District. Additionally, Defendant is a resident of and is doing business in said District.

5. Plaintiff is an individual residing in Aransas County, Texas.

6. Defendant is a foreign limited liability company authorized to do business in the State of Texas, and can be served by way of process via its registered agent, to wit: Raymond Scott Heitkamp, 3649 Leopard St., Corpus Christi, Texas 78408.

## II.
## BACKGROUND FACTS

7. Plaintiff has been employed in the banking industry since 1974, and has been a Branch Manager at various financial institutions in Texas since 1994.

8. Plaintiff was hired by Defendant on August 1, 2013, as the Branch Manager of Defendant's Rockport, Texas, branch.

9. At the time of her termination, Plaintiff's immediate supervisor was Kelly Gonzalez.

10. The first time Plaintiff was disciplined by Defendant, was on September 24, 2014.

11. On that date, Defendant's Executive Vice President and Chief Financial Officer, Seth Watts verbally warned Plaintiff for teller losses, which was memorialized in writing.

12. Specifically, Plaintiff learned that one of the tellers who worked at the Rockport branch paid funds on a check that had been stopped and that a supervisor approved the transaction. Plaintiff was instructed to re-train the tellers regarding losses and procedures for paying checks.

13. Plaintiff did so, and the teller losses significantly decreased. Watts told Plaintiff, in an email, that he would follow-up with her in six months, but he never did.

14. Over a year later, on January 22, 2016, Faiyaz Elahi, who was a new employee and Defendant's Senior Vice President/Retail Sales Manager was instructed to visit Plaintiff at the Rockport branch, along with Tiffany Anderwald.

15. Plaintiff was reprimanded that day, under the pretense that her employees were not professional or enthusiastic enough.

16. Plaintiff was also told that the Customer Service Manager, Gracie Garcia (a female who was nearly 60-years-old), was rude and not dressed appropriately.

17. This was the first time – in the two-and-one-half years Plaintiff had then been employed by Defendant – that she had heard any such complaints, and believed these complaints to be unfounded. Plaintiff's initial reaction was that she was being targeted for termination.

18. As a result of that visit, Plaintiff received a writing that said "final notice," which stated that Plaintiff was previously disciplined in a "quarterly discussion about branch performance throughout 2015."

19. Plaintiff was not previously disciplined regarding any of these issues and had no notice or warning that these alleged problems existed.

20. The writing also stated Plaintiff had not met certain goals in 2015, such as obtaining new account goals, partner referral goals, waiver/refund goals, and customer complaints/employee turnover goals, and had a "review date" of March 31.

21. In response, Plaintiff pointed out that her branch's earnings were low because its interest income for commercial loans was low, which was completely out of Plaintiff's control.

22. Plaintiff was forced by Watts to fire Garcia, who Watts then replaced with Eric Saenz. Saenz, a male under 30, had almost no experience in banking and had never managed a bank

3

branch. Regardless, Saenz's title was not Assistant Branch Manager, but instead he was hired as Plaintiff's Branch **Co-Manager**.

23. The disciplinary action was never reviewed or discussed on the March 15, review date, or any other date.

24. Thereafter, the commercial loan officer was fired and Cy Boyer was hired as the replacement. Boyer came in and immediately began helping Plaintiff' bring in new accounts, new customers, and commercial interest.

25. By the end of February, 2016, Plaintiff was already meeting her goals, and continued to do so throughout the rest of the year. For instance, at the end of 2016, the Rockport branch's goal for opening new accounts was 15 net accounts monthly, and the Rockport branch actually exceeded that goal by opening 20 net accounts monthly.

26. Regardless of Plaintiff's hard work and performance improvements, on December 7, 2016, Watts met with Plaintiff to tell her that her branch was not performing the way they *thought* it should, that she is overpaid and that she was not earning her salary.

27. Watts was not specific at all about what he meant, and Plaintiff was confused because the Rockport branch had been performing well and meeting its goals. Plaintiff was not given any specific information about what Watts was unhappy with or any means or direction related to fixing the problem. A follow-up or review date was never mentioned.

28. As a result of her unclear and ambiguous "performance issues," Plaintiff' was punished with a $10,000.00 annual salary decrease – her salary was lowered from $60,000.00 to $50,000.00, annually.

29. Thereafter, on March 24, 2017, Plaintiff's supervisor, Gonzalez, asked her to lunch. During the lunch meeting, Gonzalez asked Plaintiff if she had checked into Medicare or social

security benefits. Plaintiff explained to her that although she is 65-years-old, she does not need Medicare benefits because she has group health insurance (sponsored by Defendant), and that she won't get full social security benefits until she turns 66-years-old. Gonzalez then said, "Scott[1] and Seth want you gone within a month or two."

30. Gonzalez further told Plaintiff that Heitkamp and Watts don't look at her as a leader, and that she needed to look into her Medicare and social security benefits as it was time for her to retire.

31. Shocked, Plaintiff asked Gonzalez if she could have a week or so to think about what she said, and Gonzalez agreed.

32. Thereafter, on March 31, 2017, Plaintiff notified management that she believed she was being discriminated against and was in the process of submitting a complaint to the EEOC.

33. Plaintiff was fired the same afternoon.

## III.
## EXHAUSTION OF REMEDIES

34. Plaintiff timely filed a Charge of Discrimination simultaneously with this action, that was dually filed with the City of Corpus Christi Human Relations Commission and the Equal Opportunity Employment Commission. Because that charge is currently under investigation and pending with the EEOC, Plaintiff has not yet exhausted all administrative prerequisites to this suit.

## IV.
## VIOLATIONS OF THE EMPLOYMENT RETIREMENT INCOME SECURITY ACT "ERISA"

35. Plaintiff was a participant in, and beneficiary of, employee benefit plans sponsored by Defendant which are subject to ERISA.

---

[1] Raymond Scott Heitkamp is Defendant's President and CEO.

36. At all relevant times Defendant acted as sponsor and administrator or co-administrator of the ERISA plans Plaintiff participated in.

37. Defendant violated ERISA by interfering with Plaintiff's employment by discriminating against Plaintiff and retaliating against Plaintiff for exercising her rights, and/or with the intent to interfere with the attainment of Plaintiff's entitled ERISA rights.

38. At all times Defendant acted as the administrator and/or co-administrator of the ERISA plans. Defendant made representations to Plaintiff regarding her rights to benefits and rights under ERISA plans. Defendant by virtue of its position and conduct had fiduciary obligations imposed upon it under ERISA, which it violated by conduct as described in the previous paragraphs.

## V.
## DAMAGES

39. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in the form of lost back wages, lost future wages, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

40. Plaintiff is entitled to recover from Defendant a reasonable fee for the performance of necessary legal services in the preparation and prosecution of this action in the trial court as well as a reasonable fee for legal services performed on appeal.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff be awarded the following:

1. Judgment against Defendant for back pay, plus prejudgment interest as provided by law from the date Plaintiff was terminated until the date of judgment in an amount within the jurisdictional limits of the court.

2. Judgment against Defendant for the present value of front pay due to Plaintiff for the period following the date of the judgment, calculated as of the date of judgment.
3. An additional amount representing the compensatory damages.
4. An award of exemplary damages against defendant in a sum determined by the trier of fact.
5. Reasonable attorney's fees.
6. Interest after judgment as provided by law.
7. Costs of court.
8. Reinstatement.
9. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

GALE LAW GROUP, PLLC
711 N. Carancahua St., Suite 514
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Telephone: (361)808-4444
Telecopier: (361)242-4139

By: */s/ Amie Augenstein*
Amie Augenstein
Texas Bar No. 24085184
Southern District Bar No. 2236723
Amie@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*

*/s/ Christopher J. Gale*
Christopher J. Gale
Texas Bar No. 00793766
Southern District Bar No. 27257
Chris@GaleLawGroup.com
*Attorney for Plaintiff*

**Demand for Jury Trial**

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).